IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 04-154 |
| ROY BREWLEY | : |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                 **December 17, 2008**

     Defendant Roy Brewley asks this Court for a judgment of acquittal notwithstanding the verdict, or a new trial in the alternative, for his conspiracy to distribute cocaine conviction. He argues the Court should set aside the verdict because of a variance between the indictment and the verdict form, insufficient evidence supporting the verdict, and the Government's improper bolstering comments in closing argument. Weighing the relevant factors, I find Brewley is not entitled to a judgment of acquittal or a new trial.

## FACTS

     In 2003, federal investigations revealed several employees of the Cyril E. King Airport in St. Thomas, United States Virgin Islands, were involved in a conspiracy to smuggle large quantities of cocaine into the contiguous United States. Drug organizations who wanted to transport cocaine would contact airport employees who were later provided with cocaine packed into a bag. The bags with cocaine were taken to the Air Sunshine manager's office and stored there by Dion Brookes, the Air Sunshine manager. Employees would then remove tags from a traveler's checked and cleared bag, and the tags would be placed on the bag with cocaine. When the pre-determined flight arrived, employees would place the bag with cocaine on the plane. The bag from which the tag had been removed would either be discarded or placed on a cart without a tag. Employees would sometimes also remove the cocaine from the bag, secrete the cocaine

on their bodies, and, while in the baggage room, place the cocaine in a randomly selected bag. The selected bag would then be re-tagged and sent to the desired destination. At other times, bags would be removed from one airline and placed with another airline for delivery. The cocaine was distributed from the airport to individuals in Florida, Pennsylvania, New Jersey, and New York.

Mervin Dorival, the lead baggage handler and lead ramp agent at the airport, was the lead facilitator of cocaine transportation in the airport. Dorival was hired and paid by cocaine suppliers to transport their cocaine. Dorival determined who would pick up and tag the bags with cocaine. He also paid the employees who performed these tasks. Brewley was one of the baggage handlers under Dorival's supervision. Brewley's role in the conspiracy was to pull baggage tags from checked passengers' bags to be placed on bags with cocaine, act as a lookout for federal agents conducting inspections of the airport's baggage room area, hand bags with cocaine to Brookes for storage, and retrieve the cocaine from the bags to be transported on flights to the contiguous United States.

## DISCUSSION

On a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, the Court must decide "whether, after viewing the evidence in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Indeed, "[o]nly when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1990). Therefore, "[c]ourts must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by

substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

On a motion for a new trial, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision to grant or deny a motion for new trial is committed to my sound discretion. *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006). Where a defendant's Rule 33 motion is premised upon allegations of trial error, I will grant the motion "only if there is a reasonable probability that trial error could have had a substantial influence on the jury's decision." *Gov't of V.I. v. Commissiong*, 706 F. Supp. 1172, 1184 (D.V.I. 1989) (citations and internal quotation marks omitted). I may order a new trial on the ground a jury's verdict is contrary to the weight of evidence only if I believe "there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (citations and internal quotation marks omitted). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (citations omitted).

Brewley first contends his conviction must be set aside because the verdict form given to the jury included the words "and heroin" in the introductory line to Count I. Brewley was not charged with any heroin offense. The indictment charged Brewley with conspiracy to distribute cocaine only. At trial, parties were provided an opportunity to review the verdict form and raise objections. Defendant failed to object to the inclusion of the words "and heroin," and the verdict form with the erroneous words was provided to the jury. The jury foreperson read Brewley's verdict as to Count I as follows: "First count, conspiracy to distribute cocaine and heroin. On

3

Count One of the Indictment charging conspiracy to distribute cocaine, we, the jury, unanimously find the Defendant guilty." Following the jury's verdict, the Court learned of the error and ordered the words "and heroin" be stricken from the verdict slip. Brewley now argues the variance between the indictment and the verdict form was vital to the merits of his case, and the Court lacked the authority to amend the verdict form.

Federal Rule of Criminal Procedure 36 allows the Court to correct clerical errors at any time. "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders." Fed. R. Crim. P. 36.

In light of the evidence presented, the Court's jury instructions, and the jury's specific finding as to cocaine only, Brewley fails to show how the verdict form error substantially influenced the jury's decision or how the error merits an acquittal. All the evidence presented at trial showed cocaine was the only illegal substance involved in the drug conspiracy. The cooperating witnesses testified cocaine was the substance being smuggled out of the airport during the course of the conspiracy. Louis Penn, Jr., a United States Immigration and Customs Enforcement (ICE) Agent, testified at trial cocaine was the narcotic he suspected was involved in the conspiracy. Hector Quintana, another ICE Agent, testified he seized cocaine as part of his investigation of the conspiracy. The Court's instructions to the jury named only cocaine. To aid their deliberations, the jury was also given a copy of the Court's instructions, describing cocaine as the sole illegal substance at issue, and a copy of the redacted indictment with one drug named – cocaine. Moreover, although the introductory line included heroin, the verdict form only allowed for a finding with regard to cocaine. The verdict form asked the jury: "On Count One of the superseding indictment, charging conspiracy to distribute cocaine, we, the jury,

4

unanimously find the defendant [not guilty or guilty]." The jury, in finding Brewley guilty of conspiracy to distribute cocaine, demonstrated its judgment Brewley was guilty of the offense with which he was charged.

The evidence shows any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. The record also demonstrates the error did not substantially influence the jury's decision. *See Commissiong*, 706 F. Supp. at 1184. The error on the verdict form does not warrant an acquittal or a new trial. *See United States v. Martinson*, 419 F.3d 749, 754 (8th Cir. 2005) (holding verdict form referencing a charge of "possession of methamphetamine and/or marijuana," where defendant was charged only with methamphetamine possession, did not affect the outcome of the district court proceeding because the verdict form allowed for a finding only with regard to methamphetamine).

Brewley next argues there was insufficient evidence to support a finding of conspiracy to distribute cocaine. Brewley asserts there was no evidence at trial of a plan, a meeting of minds, or an agreement between two or more individuals, as a finding of conspiracy requires. The Government argues there was sufficient evidence of a unity of purpose to smuggle kilograms of cocaine through the airport.

When deciding whether sufficient evidence supports a jury's conviction, the evidence must be viewed in the light most favorable to the Government, and the verdict sustained if any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (quoting *United States v. Voight*, 89 F.3d 1050, 1080 (3d Cir. 1996)). To prove conspiracy, the Government must show there was "an agreement, either explicit or implicit, to commit an unlawful act, combined with

5

intent to commit an unlawful act, combined with intent to commit the underlying offense." *Id.* at 134. The alleged conspirators must share a "unity of purpose," the intent to achieve a common goal, and an agreement to work together towards that goal. *United States v. Cartwright*, 359 F.3d 281, 286 (3d Cir. 2004). This requires a conspirator have knowledge of the specific objective of the conspiracy. *Id.* at 286-87; *United States v. Idowu*, 157 F.3d 265, 266-67 (3d Cir. 1998); *United States v. Thomas*, 114 F.3d 403, 405 (3d Cir. 1997). While the elements of the offense must be proved beyond a reasonable doubt, the Government may prove them entirely by circumstantial evidence. *Brodie*, 403 F.3d at 134. "To sustain a conspiracy conviction, the 'contention that the evidence also permits a less sinister conclusion is immaterial. . . . [T]he evidence need not be inconsistent with every conclusion save that of guilt.'" *Id.* (quoting *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2003)).

Viewing the evidence in the light most favorable to the Government, a rational trier of fact could find, beyond a reasonable doubt, that Brewley knew drug distribution was the object of the conspiracy. In *Aldea*, the defendant Marilyn Rojas argued there was insufficient evidence for the jury to find she was knowingly involved in a drug conspiracy. *United States v. Aldea*, 174 Fed. Appx. 52, 59 (3d Cir. 2006). There, the Third Circuit found Rojas' ongoing relationship with members of the conspiracy and multiple instances of participation in the conspiracy provided enough evidence for a reasonable jury to find Rojas knew the purpose of the conspiracy was to distribute drugs. *Id.*

In the present case, Brewley's participation was not limited to an isolated incident. The Government presented evidence Brewley performed multiple acts in furtherance of the drug smuggling conspiracy at Cyril E. King Airport by acting as a lookout, removing tags from checked luggage, handing over bags containing cocaine to Brookes for storage, removing

6

cocaine from bags stored in Brookes's office on two occasions, and causing the cocaine to be smuggled aboard an American Airlines flight. Brewley also had an ongoing relationship with members of the conspiracy, including Dorival, who hired baggage handlers for the illegal activity, and Brookes, who received and stored bags of cocaine in his office for later distribution to baggage handlers. Brewley took orders from Dorival, a lead ramp agent who supervised the transportation of narcotics through the airport. Dorival was paid by narcotics suppliers who hired him to move narcotics to the contiguous United States. Dorival then paid baggage handlers, including Brewley, to assist him with this operation by pulling baggage tags from checked passengers' bags to be placed on unchecked bags of cocaine and acting as a lookout for federal agents. Brewley also handed bags of cocaine to Brookes for storage. Brookes received and stored the narcotics in his office until they were retrieved by the baggage handlers. On at least two occasions, Brewley collected the stored cocaine from Brookes's office. Brewley removed cocaine bricks from the bags, tucked the cocaine bricks into the waist of his pants, left the office, and went through the airport's back door onto the airport ramp. There was sufficient evidence for a reasonable jury to conclude Brewley was aware the underlying purpose of the conspiracy was to distribute cocaine.

Brewley finally contends he is entitled to a new trial for the Government's improper bolstering remarks during its closing rebuttal arguments. I disagree.

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Weekes*, 224 Fed. Appx. 200, 204 (3d Cir. 2007) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). To overturn a conviction based on a prosecutor's improper

comments, "two criteria must be met: (1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and (2) this assurance [must be] based on either the prosecutor's personal knowledge, or other information not contained in the record." *Weekes*, 224 Fed. Appx. at 204 (quoting *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998)). "Improper 'vouching' occurs where a prosecutor suggests that she has reasons to believe a witness that were not presented to the jury. . . . By contrast, a prosecutor may urge that a witness is trustworthy by arguing from record evidence; vouching occurs only where the prosecutor implicitly refers to information outside the record." *United States v. Rivas*, 493 F.3d 131, 137 (3d Cir. 2007) (citations omitted).

The standard of review used by the Court of Appeals when reviewing an improper remark during closing argument "is not whether the prosecutor's remarks amounted to error, but whether they rose to the level of 'plain error.'" *United States v. Lora-Pena*, 227 Fed. Appx. 162, 166 (3d Cir. 2007) (quoting *United States v. Young*, 470 U.S. 1, 14 (1985)). In making this determination, the Court of Appeals looks to: "(1) the nature and extent of the remarks in context; (2) whether the remarks were invited by the defense; (3) the district court's instructions and jury charge; and (4) the weight of the evidence of guilt." Brewley argues the Government's following statements in its closing rebuttal constituted improper bolstering:

> Now, ladies and gentlemen, a defendant has a choice just like those four defendants did. They had choices. I could plead guilty. As Mr. Sylvester said, my conscience, I couldn't live with it. Mr. Brent Donovan said I lied when the agent asked me if I knew about the seizure, about the drugs in September and I couldn't live with it. He called them, ladies and gentlemen. They had no idea who he was. He called them because he had a conscience and his conscience couldn't rest that he was part of an organization and he had lied about it. We didn't ask anybody to cooperate. Their cooperation was a decision that they made and because they made it, ladies and gentlemen, they are entitled, they are entitled as the law provides to receive some benefit.

8

Tr. 11.8.07, 71-72.[1] Brewley argues the remarks were improper because they injected issues broader than his guilt or innocence into the case, implied Brewley's failure to plead guilty demonstrated guilt and/or a lack of conscience, and made the jury believe Brewley was uncooperative and thus not entitled to the benefit of the presumption of innocence. The Government points out these statements were made in response to Brewley's own closing statements that the cooperators' testimony was dishonest and motivated solely by the benefits they stood to receive in exchange for their cooperation, and thus its comments on rebuttal were invited by the defense.

In *Rivas*, the prosecution described a witness's decision to cooperate with the DEA: "He decides to come forward and cooperate with the DEA, provide the information he knows about other drug dealers and actively participate in this investigation. To help himself, sure. But also to give DEA an accurate picture of what was going on in the streets with these sales that he was involved in." 493 F.3d at 138. The defendant in that case argued the prosecutor's statements constituted improper vouching, but the Court of Appeals disagreed, stating: "The prosecution discussed [the witness's] possible motives for cooperation and suggested that one of them was a pure moral interest in aiding law enforcement. There was no suggestion that the police

---

[1]The Government continued:

> As you saw, ladies and gentlemen, all four cooperatives came in here dressed with shackles on their feet and handcuffs on their hands in their prison uniforms. So if . . . [defense counsel] thinks that siting in jail for eight years, seven years, four years, three years – those are the sentences that they received. If he considers that a benefit, well, I guess I beg to differ because they are still, they are still in prison.

Tr. 11.8.07, 72.

9

cooperate only with honest witnesses, that the prosecution could assure the jury that Mobley's testimony would be accurate, or the like." *Id.*

In another instance of alleged vouching in *Rivas*, the prosecution stated "[the witnesses] came here and they told you the truth about what happened." *Id.* The Court of Appeals determined: "But again, the prosecution did not suggest it knew from extra-record evidence that [these witnesses] were telling the truth. The conclusion was based upon an argument from their reluctance to speak and their 'demeanor,' both of which the jury could observe for itself. The prosecution did not improperly vouch for its witnesses." *Id.*

In *Lora-Pena*, the defendant claimed the government engaged in prosecutorial misconduct when rebutting the defense's closing argument. The Court of Appeals, noting "any claim of prosecutorial misconduct must be viewed 'in context' against the entire record," *Lora-Pena*, 227 Fed. Appx. at 164, first looked to the defense's closing to place the prosecution's rebuttal in context. The Court of Appeals reviewed the statements of both defense and prosecution and concluded, "in light of the record as a whole . . . [t]he extent of the prosecution's comments were somewhat limited in that no similar remarks were made during the prosecution's closing statement. Both the prosecution and defense repeatedly emphasized the Government's burden of proof beyond a reasonable doubt. Additionally, the prosecution's comments on rebuttal were invited by the defense's aggressive attacks on the Marshal's credibility." *Id.* at 166.

Brewley never objected to the admission of the cooperating witnesses' guilty pleas or confessions. In closing, Brewley relied on the same guilty pleas and confessions to attack the credibility of the witnesses. Brewley used the witnesses's guilty pleas and confessions to

10

characterize the witnesses as dishonest. For example, Brewley's closing included the following statements regarding witnesses' credibility:

> Brent Donovan says Mr. Brewley provided tags. Now please bear in mind Brent Donovan is their witness who they have talked to, who they have prepped, who they have prepared for court and they asked him, well, who was involved in this? He named them. Then the Government had to ask again and who else was involved. . . . This is the guy who agreed to testify with the Government whom they have prepped. You have to pull teeth from him for him to name the one defendant that's on trial? Come on, man. . . . It's the Government's case. They prepped the witness. They know what the witness was going to say. They didn't ask him. They never asked him. . . . When I asked [Dion Brookes] those questions, he said . . . what I said in here is a lie. The truth happened at the Grand Jury. . . . Remember Dion Brookes? What you facing? Ten to life. Did you agree with the Government that you will cooperate and get other people, give information on them so that you could – yes, I did. And the Government agrees that if you do such a thing, they will file a supplement to the plea agreement? Yes, I agreed. Did they file a supplement to the plea? Yes, they did. That means he has cooperated? Right. He has done what they asked him to do. He says – and then in supplement to the plea it says that if you provide more assistance we will also at sentencing file a departure from what you get. Well, did it happen? Yes. Very satisfied. Very satisfied.

Tr. 11.8.07, 52-59. In response, the Government began by speaking generally of the choice to cooperate or plead guilty that all defendants face. The Government then, using the evidence already before the jury, spoke only of the cooperating witnesses in this case who had decided to plead guilty and cooperate with the investigation. The Government responded only regarding the credibility of the cooperating witnesses and at no point, within the statements at issue, spoke particularly of Brewley. Examining the allegedly improper statements, nothing can be taken to imply that Brewley was guilty or lacked a conscience, or that he was uncooperative and therefore not entitled to be presumed innocent. The Government's statements were not improper and were, in fact, invited by defense closing arguments. Moreover, in light of the evidence against Brewley, and the Court's jury instructions on witness credibility, examining the evidence, the burden of proof, and the substantive law, Brewley's conviction must stand.

11

An appropriate order follows.